IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PHARMA FUNDING LLC,           §
    Plaintiff,                §
                              §
V.                            §          No. 3:20-cv-1731-N-BN
                              §
VERDE PHARMACY & MEDICAL      §
SUPPLY LLC and OSARU OKORO,    §
    Defendants.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. *See* Dkt. No. 35.

Plaintiff Pharma Funding, LLC has filed a Motion for Default Judgment against Defendant Verde Pharmacy & Medical Supply, LLC. *See* Dkt. No. 58. Verde did not file a response.

**Background**

On November 2, 2018, Verde executed an Accounts Receivable Master Purchase Agreement ("MPA") to memorialize the terms and conditions under which Plaintiff agreed to purchase and Verde agreed to sell Qualified Accounts Receivable. Under the MPA, Verde had an option to repurchase the Qualified Accounts Receivable. If it did not exercise the option, it was obligated to transfer all remaining rights to the Qualified Accounts Receivable to Plaintiff. The MPA also required

-1-

Verde to deposit inbound payments on the Qualified Accounts Receivable into a Beneficial Owner Account for payment to Plaintiff. Verde has neither transferred the rights to the Qualified Accounts Receivable nor paid the amount due of $107,559.66.

Plaintiff filed its Original Complaint against Verde and Defendant Osaru Okoro on June 30, 2020. *See* Dkt. No. 1. Both Defendants were served with citation and a copy of the complaint. *See* Dkt. No. 7. Neither filed an answer or other responsive document. The Clerk made entry of default on September 14, 2020. *See* Dkt. No. 13. Pharma then moved for default judgment against both Defendants. *See* Dkt. No. 15. The Court granted the motion and entered final judgment on January 15, 2021. *See* Dkt. No. 19.

On March 24, 2021, Defendants, appearing through counsel, filed a motion to vacate the final judgment. *See* Dkt. No. 20. On July 9, 2021, the Court granted the motion to vacate, *see* Dkt. No. 24, and vacated the final judgment, *see* Dkt. No. 19.

Defendants filed a motion to dismiss on August 16, 2021, *see* Dkt. No. 2, which was denied on March 21, 2022, *see* Dkt. No. 52.

On September 20, 2021, while the motion to dismiss was pending, Defendants' counsel filed a motion to withdraw as counsel, s*ee* Dkt. No. 32, which was granted on January 14, 2022. *See* Dkt. No. 41. At both the January 14, 2022, hearing and in the order granting Verde's attorney's motion to withdraw, the undersigned explained that Verde, as a limited liability company, is not allowed to proceed pro se or through a non-attorney but must be represented by an attorney in litigation in

federal court. *See* Dkt. No. 41 at 8. The undersigned ordered that Verde must cause new counsel to enter an appearance on its behalf by January 28, 2022. *See id.* The undersigned also "warned [Verde] that failure to hire counsel to represent it by this deadline may result in appropriate measures, including possibly striking its defenses and entering a default judgment." *See id.*

Plaintiff filed its Third Amended Complaint on March 14, 2022, in which it asserts claims against Verde for breach of the MPA, civil theft under California law and conversion. Plaintiff seeks statutory treble damages and the imposition of a constructive trust. *See* Dkt. No. 50. Verde has not filed an answer or other responsive document.

On April 15, 2022, the Court found that new counsel had not appeared on behalf of Verde and ordered that Verde was in default. *See* Dkt. 56. The Clerk of Court made entry of default against Verde and mailed notice of the entry of default to Verde's registered agent, Osaru Okoro. *See* Dkt. No. 57.

Plaintiff filed the pending motion for default judgment on April 15, 2022. *See* Dkt. No. 58. Verde has not filed a response.

The undersigned now concludes that the Court should grant the motion for default judgment against Verde.

## Legal Standards

Under Federal Rule of Civil Procedure 55(a), a court may enter default judgment when a defendant fails to answer or otherwise respond to a complaint

within the time required by the Federal Rules of Civil Procedure and after the Clerk makes an entry of default. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

Before entering a default judgment, a court should consider any relevant factors. Such factors include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (internal citations omitted). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (internal quotation marks omitted).

In the Fifth Circuit, default judgments are disfavored, owing to its "policy in favor of resolving cases on the merits." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014). That policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999).

## Analysis

I.    <u>The Court has subject matter jurisdiction.</u>

Plaintiff has shown that there is jurisdiction over the subject matter and the parties. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and attorneys' fees. Plaintiff is a Delaware limited liability company with its principal place of business in California. All its members and managers are citizens

of California. Defendant Verde is a Texas limited liability company with its principal place of business in Texas. Its sole member, Osoru Okoro, is a citizen of Texas.

II.    <u>The procedural requirements for default judgment have been met.</u>

Plaintiff has satisfied the prerequisites for entry of default judgment against Verde.

Plaintiff filed its Original Complaint on June 30, 2020, against Verde and Okoro. Verde was served with the summons and Original Complaint. *See* Dkt. No. 7.

Plaintiff filed its Third Amended Complaint on March 14, 2022. *See* Dkt. No. 50. Verde has not filed an answer or otherwise responded to the Third Amended Complaint within the time required by the Federal Rules of Civil Procedure. The Clerk of Court made entry of default against Verde on April 15, 2022 and served notice of the entry of default on Verde's registered agent, Osoru Okoro. *See* Dkt. No. 57. Verde is a limited liability company and, therefore, cannot be a minor, an incompetent person, or active in military service.

III.    <u>The pleadings support default judgment against Verde.</u>

There is a sufficient basis in the pleadings for default judgment against Verde. The Court takes as true the facts asserted by a plaintiff against a defaulting defendant. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). The defendant, by its default, admits the plaintiff's well-pleaded allegations of fact. *See id.*

When determining whether the requested default is "'supported by well-pleaded allegations' and has 'a sufficient basis in the pleadings,'" the Fifth

Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 505 F.2d 1200, 1206 (5th Cir. 1975)).

"Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. (8)(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citations omitted)).

## A.    Verde breached the Master Purchase Agreement.

Under the MPA's choice-of-law clause, all questions concerning the performance, construction, validity, and interpretation of the MPA are governed by California law. *See* Dkt. No. 58-1 at 32 (MPA at ¶ 25)).

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011).

The parties executed a Master Purchase Agreement. *See* Dkt. No. 50 at 5 ¶ 11; Dkt. No. 58-1 at 23-42. Although the MPA was erroneously marked "Void" by the internet service Docusign when it was not signed by Plaintiff within the time prescribed by Docusign, the parties treated is as a valid contract. *See* Dkt. No. 50 at 5 ¶ 19.

Plaintiff purchased Qualified Accounts Receivable from Verde under the MPA. Each purchase was reflected on a purchase addendum to the MPA. Plaintiff's purchases are included on 61 purchase addenda to the MPA. *See id*. at 5 ¶ 21.

Under the MPA and purchase addenda, Verde retained an option to repurchase any Qualified Accounts Receivable it sold to Plaintiff at a price discounted from the aggregate Insurance Pay Amount ("IPA"). *See id*. at 50 ¶ 23; Dkt. No. 58-1 at 25-26 ¶ 7. The option would expire 90 days after the closing of the sale of the Qualified Account Receivable. *See id*. If Verde did not repurchase the Qualified Accounts Receivable, it was obligated to transfer all remaining rights in them to Plaintiff. *See* Dkt. No. 50 at 6 ¶ 23; Dkt. No. 58-1 at 26 ¶ 10.

Verde repurchased the Qualified Accounts Receivable included in all but ten of the purchase addenda. *See* Dkt. No. 50 at 6 at ¶ 24. The Qualified Accounts Receivable included in the ten purchase addenda Verde did not repurchase had an IPA of $108,940.66. *See id*. at 7 ¶ 31; Dkt. No. 58-3.

Plaintiff's final purchase of Qualified Accounts Receivable from Verde closed on December 30, 2019, and Verde's options to repurchase any of the Qualified Accounts Receivable expired on March 31, 2020. *See* Dkt. No. 50 at 8 ¶ 33.

Verde breached paragraphs 7, 10, and 15 of the MPA. *See id.* at 13-18.

Paragraphs 7 and 10 of the MPA concern Verde's option to repurchase Qualified Accounts receivable and its obligations to Plaintiff if it does not repurchase. Verde did not repurchase the Qualified Accounts Receivable included in ten purchase addenda. Verde was required, among other things, to deposit payments that it received concerning those Qualified Accounts Receivable into a Beneficial Owner Account. *See id.* at 9 ¶¶ 45, 46. It failed to do so. Instead, Verde deposited the payments belonging to Plaintiff into Verde's operating accounts or other unauthorized third-party accounts. *See id.* at 8 ¶ 37.

Paragraph 15 lists Seller's Covenants. Verde breached paragraph 15 by doing or failing to do the following:

> a.    Failing to ensure that all insurance payments received from a payor related to a transaction with Pharma funding will be first and directly deposited into the Beneficial Owner Account, without exception;
> b.    Failing to ensure that all payors with ACH/EFT capabilities deliver payments electronically (ACH/EFT) directly into the Beneficial Owner Account;
> c.    Failing to ensure that any non-electronic funds received from any payor will be deposited into the Beneficial Owner Account within 2 business days of receipt of such payment and failing to notify Pharma Funding and deliver electronic copies of checks or other non-electronic forms of payments to Pharma Funding immediately upon receipt;

d.      Failing to provide Pharma Funding with a 90-day notice prior to re-directing any deposit away from the Beneficial Owner Account on any payment related to transactions with Pharma Funding;

e.      Failing to provide Pharma funding with view-only access to all of Verde's bank accounts, PSAO portals, and Billing Systems;

f.      Taking action to withhold information that may have resulted in delay of payments owed to Pharma Funding;

g.      Failing to operate in good faith for the benefit of Pharma Funding at all times and at Pharma Funding's sole discretion;

h.      Failing to disclose any material information, such as debt to suppliers, marketers, or other service providers that may have impacted Verde's ability to produce additional accounts receivables or conduct its business as required to fulfill its obligations;

…

j.      Failing to cooperate with all requests of Pharma Funding to advise any obligor as to the transfer and assignment of such Qualified Accounts Receivables to Pharma Funding in order to ensure payment is directly remitted to Pharma Funding on a timely basis;

k.      Failing to deliver to Pharma Funding, upon request, any existing documents necessary to enforce the collections of the Qualified Accounts Receivables including bills, medical reports, payments, lien letters, correspondence, etc.;

l.      Failing to immediately forward to Pharma Funding any correspondence, or notice relating to the Qualified Accounts Receivables, and failing to immediately report to Pharma Funding any communications in any other form, e.g., via telephone, email, facsimile transmission or traditional mail;

…

o.      Failing to immediately notify Pharma Funding of any payor audit, recoupments, prepayment review, prior authorization, contract suspension, or contract termination; and

p.      Failing to provide a minimum of 90 days prior written notice to Pharma Funding of any relation of Verde's company offices or facilities.

*Id.* 9-12 ¶¶ 47, 48;Dkt. No. 58-1 at 25-26 ¶ 15.

These breaches caused Plaintiff damages. *See* Dkt. No. 50 at 12 ¶¶ 49, 50.

Verde failed to provide Plaintiff funds that it received for the Qualified Accounts

Receivable by transferring the funds in the Beneficial Owner Account, transferring

the rights to the Qualified Accounts Receivable to Plaintiff, or otherwise paying the amount due. The Qualified Accounts Receivable Plaintiff purchased had an aggregate Insurance Pay Amount ("IPA") of $108,940.66. *See id.* at 7 ¶ 31. Plaintiff received insurance payments in the amount of $1,380.97, leaving a remaining IPA of $107,559.69. *See id.* at 7 ¶32.

Thus, Plaintiff has suffered damages for the unpaid amount of $107,559.69, plus interest. *See id.* at 14 ¶ 59. The MPA also entitles the prevailing party in litigation brought to enforce the agreement to recovery of its costs and attorneys' fees. *See* Dkt. No. 50 at 12 ¶ 51; Dkt. No. 58-1 at 32 ¶ 27.

### B.    Verde is liable for civil theft under California law

The California Penal Code provides civil remedies for theft victims. *See* CAL. PENAL CODE §§ 496(a),(c). California Penal Code section 496(a) applies to "[e]very person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft." CAL. PENAL CODE § 496(a). Any person "who has been injured by a violation of [section 496(a)] ... may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees." CAL. PENAL CODE § 496(c). The term "theft" in section 496 includes theft committed by means of false pretenses, larceny, or embezzlement. *See* CAL. PENAL CODE § 490(a); *see also Denker v. Ricchio*, Case No. 8:21-cv-01668-JVS (DFMx), 2022 WL 2203678, at *3 (C.D. Cal. May 12, 2022); *Siry*

*Inv., L.P. v. Farkhondehpour,* No. S262081, ___ P.3d___, 2022 WL 2840312, at *8 n.11 (Cal. July 22, 2022).

California Penal Code section 484 describes acts constituting theft. *See* CAL. PENAL CODE § 484. The first sentence of section 484 states:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud another person of money…is guilty of theft.

CAL. PENAL CODE § 484(a).

A defendant "who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any person of money…and thereby fraudulently gets possession of money or property" obtains money by false pretenses and is subject to the penalties for larceny [theft]. CAL. PENAL CODE § 532(a).

Embezzlement is defined as "the fraudulent appropriation of property to whom it has been intrusted." CAL. PENAL CODE § 503.

> A defendant "who shall fraudulently remove, conceal or dispose of any… personal property or effects of another in his possession, under a contract of purchase not yet fulfilled, and any person in possession of such goods, chattels, or effects knowing them to be subject to such lease or contract of purchase who shall so remove, conceal or dispose of the same with intent to injure or defraud the lessor or owner thereof, is guilty of embezzlement [theft].

CAL. PENAL CODE § 504(a).

> Every…agent…or collector, or person otherwise entrusted with or having in his control property for the use of any other person, who

fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, and any contractor who appropriates money paid to him for any use or purpose, other than for that which he received it, is guilty of embezzlement [theft].

CAL. PENAL CODE § 506.

Verde committed civil theft as defined by California Penal Code §§ 484(a), 490(a), 503, 504(a), 506 and 532. *See* Dkt. No. 50 at 13-17.

Verde took payments on account of Qualified Accounts Receivable that Plaintiff had purchased, which belonged to Plaintiff. *See id.* at 15 ¶ 61.

Verde fraudulently appropriated payments belonging to Plaintiff that had been entrusted to it by receiving the payments and failing to remit them to Plaintiff as required by the MPA and by misrepresenting to Plaintiff that the payments had not yet been received. *See id.* at 15 ¶ 62.

Verde knowingly and designedly defrauded Plaintiff of money by failing to direct all payments on account of Qualified Accounts Receivable into the Beneficial Owner Account. *See id.* at 15 ¶ 63.

Verde had control of payments for the use and benefit of Plaintiff and fraudulently appropriated the payments for a use or uses other than the due and lawful purpose for which those payments had been entrusted. *See id.* at 15 ¶ 64. Specifically, Verde received or fraudulently redirected Plaintiff's money that it was required to deposit into the Beneficial Owner Account into other unauthorized accounts. *See id.* at 15 ¶64.

-13-

Verde failed to fulfill the MPA, which was a contract of purchase by, among other things, failing to deposit into the Beneficial Owners Account all payments received concerning Qualified Accounts Receivable that Plaintiff had purchased. *See id.* at 15 ¶ 65. Verde and its agent, Okoro, fraudulently removed, concealed, or disposed of funds belonging to Plaintiff by depositing them into other unauthorized accounts and blocking Plaintiff's view-only access to Verde's operating accounts. *Se id.* at 15 ¶ 64.

Verde had possession of payments owned by Plaintiff and, knowing the payments were subject to the MPA, removed, concealed, or disposed of the payments with the intent to injure or defraud Plaintiff by, *inter alia*, depriving Plaintiff of the payments. *Se id.* at 16 ¶ 66.

Verde was a "collector" as described in California Penal Code § 506 because Verde collected payments on account of Qualified Accounts Receivable that Plaintiff had purchased, or had such payments in its possession or under its control for Plaintiff's use, even if those payments were in the name of either Defendant and even if one or both of the Defendants had any direct or indirect interest in or to the payments or any portion of them. *Se id.* at 16 ¶ 67.

Verde obtained and received the proceeds of Qualified Accounts Receivable rightly belonging to Plaintiff in a manner constituting "theft" as defined in California Penal Code §§ 484(a), 490(a), 503, 504(a), 506 and 532, and knowingly concealed, withheld or aided in concealing and withholding those funds from Plaintiff. As a

direct and proximate result of Verde's theft of Plaintiff's money, Plaintiff suffered damages of $107,559.69, plus costs and attorneys' fees. Plaintiff is also entitled to treble damages under California Penal Code § 496.

           C.      <u>Verde converted property belonging to Plaintiff.</u>

Under California law, "[t]he elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 354 P. 3d 334, 344 (Cal. 2015). "[A]bsent from this formula is any element of wrongful intent or motive," as "conversion is a 'strict liability'" tort." *Voris v. Lampert*, 446 P.3d 284, 290 (Cal. 2019).

"A successful plaintiff in a conversion action is entitled to recover the value of the property at the time of the conversion, with interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted plus fair compensation for the time and money properly expended in pursuit of the property." *Id.* "Punitive damages are recoverable upon a showing of malice, fraud, or oppression." *Id.*

Verde received payments in specific, identifiable, and separate electronic ACH/EDF transfers and checks on account of Qualified Accounts Receivable that were owned by Plaintiff and which Plaintiff had a right to possess, but Verde failed

and refused to deposit or direct the payments into the Beneficial Owner Account or otherwise deliver the payments to Plaintiff. *See* Dkt. No. 50 at 17 ¶ 72.

The payments were delivered to Verde for safekeeping, intended to be segregated from Verde's other accounts, kept as an intact fund to be deposited into the Beneficial Owner Account, and not subject to a title claim by Verde. *See id.* at 17 ¶ 73. Verde wrongfully and without authorization assumed and exercised control over the payments to the exclusion of, or inconsistent with, Plaintiff rights, including Plaintiff's ownership of and possessory rights in the payments. *See id.* at 17 ¶ 74. Verde's wrongful exercise of control substantially interfered with Plaintiff's rights, and Plaintiff did not consent to Verde's wrongful exercise of control. *See id.* at 17 ¶¶ 76, 77.

Plaintiff demanded return of the payments that Verde had diverted but Verde refused to deposit them into the Beneficial Owner Account or otherwise return the payments to Plaintiff. *See id.* at 17 ¶ 78. Verde's wrongful exercise of control, diversion of, and failure to return the payments proximately caused and was a substantial factor in causing harm to Plaintiff. *See id.* at 18 ¶ 78. Verde converted payments and is liable to Plaintiff for compensatory damages in an amount equal to the $107,559.69 value of the payments. *See id.* at 18 ¶ 79.

Plaintiff provided Verde with specific information regarding payments that had been issued to Verde on account of Qualified Accounts Receivable owned by Plaintiff that Verde had not deposited into the Beneficial Owner Account. *See id.* at

18 ¶ 80. Nevertheless, Plaintiff still failed and refused to deposit the payments into the Beneficial Owner Account or turn over the payments or any subsequent payments to Plaintiff consistent with Plaintiff's rights to the payments. *See id.* at 18 ¶ 81. In so doing, Verde acted with actual malice, or at least gross negligence evidencing a willful, wanton, or reckless disregard of Plaintiff's rights and interests. *See id.*

Plaintiff has alleged sufficient facts concerning its conversion claim to raise a right to relief above the speculative level. Accordingly, Plaintiff is entitled to actual damages in the amount of $107,599.69, punitive damages, attorneys' fees, court costs and legal expenses.

III.    <u>Consideration of other factors support default judgment against Verde.</u>

Although default judgment is always a harsh remedy, it is Plaintiff who would suffer substantial prejudice if default judgment is not entered against Verde. This is the second motion for default judgment Plaintiff has submitted – and that is because, after the Court entered dedfault judgment against both Defendants, Verde made its only appearance in the case, through counsel, by requesting the default judgment be set aside and then filing an unsuccessful motion to dismiss. Otherwise, Verde has failed to respond or obtain counsel.

The grounds for default are clear. Verde has failed to obtain counsel after being admonished against the consequences of and ordered to do so.

There is nothing before the Court to suggest that Verde's default was caused by good faith mistake or excusable neglect. To the contrary, Verde responded when it faced default before but otherwise fails to participate in this judicial proceeding.

Nor would the Court feel obligated to set aside a default on Verde's motion. The fact that Verde again faces default judgment is nobody's fault but its own.

IV.    <u>The Court should impose a constructive trust.</u>

Plaintiff seeks the imposition of a constructive trust on funds wrongfully obtained by Verde and the proceeds of those funds. *See* Dkt. No. 50 at 20. Although California law applies to Plaintiff's claims against Verde, Texas law applies to its request for a constructive trust. *See In re iHeartMedia, Inc.*, 597 B.R. 339, 350 (Bankr. S.D. Tex. 2019) ("where the parties contractually choose the law of a state other than the forum state, matters of remedy and procedure are nonetheless governed by the law of the forum state").

A constructive trust is a remedy for unjust enrichment. *See Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 247 (5th Cir. 2020); *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). It is not an independent cause of action under Texas law. *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010). "To obtain a constructive trust, the proponent must prove (1) the breach of a special trust, fiduciary relationship, or actual fraud, (2) unjust enrichment of the wrongdoer, and (3) tracing to an identifiable res." *Midwestern Cattle Mktg.*, 800 F. App'x at 247

(quoting *In re UTSA Apartments 8, L.L.C.*, 886 F.3d 473, 488 (5th Cir. 2018) (quoting *Gray v. Sangrey*, 428 S.W.3d 311, 315 (Tex. App.—Texarkana 2014, pet. denied))).

The MPA creates a special trust relationship under which Verde manages payments received by third-party payors for Plaintiff's benefit. Verde breached that trust by wrongfully withholding or retaining payments that were owned by Plaintiff or to which Plaintiff was rightly entitled. Verde failed to pay Plaintiff the IPA, redirected funds from the Beneficial Owner Account, failed to provide notice concerning payments received, failed to provide view-only access to its operating accounts, and failed to act in good faith for Plaintiff's benefit. Verde was unjustly enriched by its retention of payments that belonged to Plaintiff. *See* Dkt. No. 50 at 20 ¶ 91.

V.    The Court should award reasonable attorneys' fees.

    A.    California Legal Standard

California law governs the Court's analysis of the amount and reasonableness of Plaintiff's attorney's fee award. A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case. *See AMS Sensors USA Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-CV-00451, 2022 WL 3270007, at *2 n.1 (E.D. Tex. Aug. 10, 2022) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002)).

The United States District Court for the Eastern District of Texas recently determined an attorneys' fee award under California law. It stated the legal standard applied by California courts to determine reasonable attorneys' fees:

> California state law allows an award of attorney's fees when a contract provides for the award of attorney's fees for a party that prevails on all contract claims in a contract dispute. *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (Cal. 1999); CAL. CIV. CODE § 1717. Attorney's fee awards are calculated with the lodestar method. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133–35 (Cal. 2001). The lodestar amounts to "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (Cal. 2000). This "lodestar analysis is generally the same under California law and Federal law." *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *2 (N.D. Cal. Jan. 22, 2020) (quoting *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012, 1017 (C.D. Cal. 2014)).

> In calculating the lodestar, the trial court first determines the reasonable hours expended on the case and a reasonable hourly rate. *Ketchum*, 24 Cal. 4th at 1133–35. The trial court, after excising any unnecessary or duplicative hours, multiplies the reasonable hours expended by the reasonable hourly rate to determine the lodestar amount. *Id.* Then the lodestar may be adjusted based on other factors. *Id.* The trial court exercises its sound discretion throughout the process. *Id.*

> The party seeking fees bears the initial burden of establishing the hours expended litigating the case. *Corbett v. Hayward Dodge, Inc.*, 119 Cal. App. 4th 915, 926 (Cal. App. 1st Dist. 2004); *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (Cal. App. 2d Dist. 1992). The party must provide sufficient documentation of the tasks completed and the amount of time spent. *See Ketchum*, 24 Cal. 4th at 1132; *Bernardi v. Cnty. of Monterey*, 167 Cal. App. 4th 1379, 1398 (2008). The requesting party also must show that the "[t]he reasonable hourly rate is that prevailing in the community for similar work." *PLCM*, 22 Cal. 4th at 1095. "[T]he awarding of attorney fees is a highly fact-specific matter best left to the trial court's discretion." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 155 (2006).

> Fee awards calculated under the lodestar method generally are presumed to be reasonable. *PLCM Grp.*, 22 Cal. 4th 1084 at 1097. However, the lodestar may be adjusted upwards or downwards based on certain factors in order to "fix a fee at the fair market value for the particular action." *Ketchum*, 24 Cal. 4th at 1132. "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Id.*

*AMS Sensors USA*, 2022 WL 3270007, at *2-*3.

B.    Plaintiff is entitled to recover reasonable attorneys' fees.

California Civil Code § 1717(a) provides that the prevailing party in a breach of contract action "shall be awarded" its "reasonable attorney's fees" where the contract "specifically provides for attorney's fees." CAL. CIV. CODE § 1717(a). The MPA provides for the prevailing party's recovery of reasonable attorneys' fees, costs, and all expenses "[i]f a legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any provision of this Agreement." Dkt. No. 58-1 at 32 ¶ 27; *see* Dkt. No. 50 at 12 ¶ 51.

California Penal Code § 496(c), which provides a civil remedy for theft victims, also authorizes the recovery of reasonable attorneys' fees. *See* CAL. PENAL CODE § 496(c).

Accordingly, Plaintiff is entitled to attorneys' fees on both its breach of the MPA claim and its civil theft under California law claim.

C.    Plaintiff's attorneys' fees are reasonable.

Next, the Court must determine whether the amount of fees Plaintiff requests is reasonable. *See AMS Sensors USA*, 2022 WL 3270007, at *5.

> It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court[.]" *Melnyk v. Robledo*, 64 Cal. App. 3d 618, 623 (Cal. App. 2d Dist. 1976). "The value of legal services performed in a case is a matter in which the trial court has its own expertise." *Id.* In determining a fee, the Court "is governed by equitable principals." *PLCM*, 22 Cal. 4th at 1095 (quoting *Montgomery v. Bio-Med Specialties, Inc.*, 183 Cal. App. 3d 1292, 1297 (Cal. App. 4th Dist. 1986)). Ultimately, the Court should use its discretion to "fix the fee at the fair market value for the legal services provided." *Id.* California courts generally begin this inquiry with a lodestar calculation. *PLCM*, 22 Cal. 4th at 1095. The lodestar calculation is generally based on hours reasonably expended and a reasonable hourly rate. *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002).

*Id.* at *5-*6.

Plaintiff seeks a total of $80,082.44 for attorneys' fees. *See* Dkt. No. 58 at 29-30. It was represented by two law firms in this case — Shields Legal Group ("SLG") and Lubell|Rosen ("L|R"). Plaintiff maintains it has incurred reasonable and necessary attorneys' fees for representation by SLG in the amount of $51,462.94 and by L|R in the amount of $28,619.50. *See id.* at 29-30 ¶¶ 103-07. The requested attorneys' fees award is supported by the Declarations and Supplemental Declarations of David A. Shields of SLG, *see* Dkt. No. 58-1 at 284-293, 328-337, and Norman S. Segall of L|R, *see id.* at 311-321, 362-368, along with itemized billing records detailing the attorney's and paralegal's hourly rates and time spent on each task performed, *see id.* at 294-313, 322-327, 338-364, 372-379.

The undersigned will begin with determining the lodestar amount, which, as stated above, is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate.

> Courts must consider "the hourly amount to which attorneys of like skill in the area would typically be entitled." *Ketchum*, 24 Cal. 4th at 1133. "The rates of comparable attorneys in the forum district are usually used." *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1009 (Cal. App. 1st Dist. 2013); *see also Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 700 ((Cal. App. 1st Dist. 2014) ("The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located." The movant may prove the prevailing market rate through its own affidavits, without additional evidence. *Davis v. City of San Diego*, 106 Cal. App. 4th 893, 903 (Cal. App. 4th Dist. 2003).

*AMS Sensors USA*, 2022 WL 3270007, at *6.

> Next, the court "must carefully review attorney documentation of hours expended." *Ketchum*, 24 Cal. 4th at 1132. Prevailing counsel is entitled to compensation for all hours "reasonably spent unless special circumstances would render an award unjust." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 446 (Cal. App. 2d Dist. 2000) (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (Cal. 1982)). Time is compensable if it was reasonably expended and is the type of work that would be billed to a client. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933). "'Reasonably spent' means that time spent 'in the form of inefficient or duplicative efforts is not subject to compensation.'" *Horsford v. Bd. of Trs. Of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (Cal. App. 5th Dist. 2005) (quoting *Ketchum*, 24 Cal. 4th at 1132).

*Id.* at *7.

SLG's hourly rates and hours expended are reasonable.

SLG is based in Dallas, Texas, which is in the forum district. Mr. Shields states in his Declarations that he was licensed as an attorney by the State of Texas

2012 and has been practicing law in the State of Texas continuously since then. For his entire legal career, he has handled civil and commercial litigation throughout the State of Texas, including commercial litigations matters like this lawsuit. Mr. Shields states that through his experience as a trial attorney in commercial litigation like this case, he is familiar with the customary and reasonable attorneys' fees charged in the State of Texas and in the North Texas area for legal actions of this type. Mr. Shields worked 47.5 hours in this case but did not charge Plaintiff for 8 of those hours. He billed 39.9 hours at a $350 hourly rate for a total of $13,965.00 in attorneys' fees.

Eileen Costello is the other SLG attorney who worked on this case. She also was licensed as an attorney by the State of Texas 2012. Her practice focuses on complex commercial litigation at both the state and federal level. Ms. Costello worked 114 hours in this case but did not bill Plaintiff for 19.9 of those hours. She billed 93.1 hours at a $325 billing rate for a total of $30,257.00 in attorneys' fees.

S&G also billed for work done by two paralegals at the hourly rate of $175.00. SLG billed Plaintiff for 25 hours of work done by one paralegal for a total of $44,375.00 in attorneys' fees and for 22.4 hours of work done by the other paralegal for $3,920.00 in attorneys' fees. SLG did not bill for 25.9 hours of paralegal time.

The total amount of attorneys' fees SLG billed Plaintiff is $52,517.50.

Plaintiff maintains that the number of hours expended by SLG was necessary and reasonable and that SLG's hourly rates are consistent with the rates of similarly situated attorneys in the State of Texas and the North Texas area.

Considering the nature of this case, the rates are consistent with the prevailing market rate for the Dallas-Fort Worth legal community. *See e.g. Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537 to $862 per hour to be a reasonable rate to charge); *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906–07 (E.D. Tex. 2017) (finding a range from $450 to $860 per hour to be a reasonable rate to charge for attorneys, and a range of $150 to $250 to be a reasonable rate to charge for staff). The undersigned also notes that both Mr. Shields and Ms. Costello are associates and SLG wrote off over $15,000.00 in fees.

L|R's hourly rates and hours expended are reasonable.

L|R is located in Florida. Mr. Segall states in his Declarations that Plaintiff's president is his long-time client and initially retained L|T as national managing counsel for collection actions throughout the country in July 2019 and specifically for this action in January 2020. Mr. Segall recommended that Plaintiff retain the Texas-based SLG firm and specifically attorneys David A. Shields and Eileen Costello.

Mr. Segall was licensed as an attorney by the State of Florida in 1973 and has been practicing law in the State of Florida continuously since then. For his entire

career, he has handled civil and complex litigation throughout the State of Florida, including commercial litigation matters like this lawsuit. He is currently a partner at L|R. Prior to joining L|R, he was a shareholder at several prestigious law firms in the Miami/Fort Lauderdale area and was the financial managing partner of a 25-lawyer firm. He is rated AV-Preeminent by Martindale-Hubbell. Mr. Segall billed Plaintiff for 30.4 hours of work at a $495 hourly billing rate for a total of $15,048.00 in attorneys' fees.

Two other L|R partners represented Plaintiff in this lawsuit.

Cynthia Barnett-Hibnick has been licensed in the State of Florida since 1983. She practices in the areas of health law and healthcare litigation, business and commercial litigation, peer review defense, qui tam and healthcare fraud defense, medical malpractice defense, HIPAA/HITECH, FIPA and other statutory, regulatory, private, security risk assessment, complaint and health law matters at both the state and federal level. She is rated AV-Preeminent by Martindale-Hubbell. She billed Plaintiff for 25.6 hours of work at a $495 hourly rate for a total of $12,672.00 in attorneys' fees.

Ronald G. Neiwirth has been licensed in the State of Florida since 1972. He specializes primarily in creditors' rights, business reorganization and bankruptcy, and litigation associated with those areas. He has litigated issues concerning exemptions from execution, fraudulent and preferential transfer, discharge and non-dischargeability, and asset protection issues and is counsel in over 100 reported

cases. He billed Plaintiff for .4 hours of work at a $450 hourly rate for a total of $180.00 in attorney's fees.

L|R also billed Plaintiff for work done by paralegals. It billed for 1.2 hours of work performed by Ann Casalis at a $185 billing rate for a total of $222.00; .9 hours of work performed by Jenny Perez at a $150 hourly rate for a total of $135.00; and 2.9 hours of work performed by Jenny Perez at a $125 hourly rate for a total of $362.50.

The total amount of attorney's fees L|R billed Plaintiff was $28,619.

Mr. Segall states that through his experience as a trial attorney in commercial litigation like this case, he is familiar with the customary and reasonable attorney's fees charged in the State of Florida and in federal courts in which he has been admitted to practice *pro hac vice*, including the Southern District of Texas, for legal actions of this type and the hourly rates charged by L|R are reasonable. He also states that the hours expended were for reasonable and necessary legal services.

The undersigned finds that Plaintiff submitted satisfactory evidence to show that L|R's hourly billing rates and hours expended are reasonable.

Accordingly, having found the hourly rates and hours expended by SLG and L|R reasonable, and based on the calculations in the preceding paragraphs, the undersigned calculates the lodestar amount to be $80,957.

Next, the undersigned must determine whether the Court should adjust the lodestar amount based on the foregoing factors: (1) the novelty and difficulty of the of

the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, and (4) the contingent nature of the fee award. *See AMS Sensors USA*, 2022 WL 3270007, at *9 (citing *Ketchum*, 24 Cal. 4th at 1132). The undersigned notes that Mr. Shields and Mr. Segall follow Texas practice and base their arguments against an adjustment on the factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974). Although one Texas court has found those factors do not conflict with California law, *see Fisher Sci. Intern., Inc. v. Modrovich*, No. CIV.A. H-03-0467, 2005 WL 3348901, at *3 (S.D. Tex. Dec. 8, 2005), the undersigned will follow California law to determine whether an adjustment should be made.

Considering the four factors, the undersigned finds that an adjustment of the lodestar amount is not appropriate. Plaintiff was required to retain attorneys specializing in pharmacy finance, healthcare matters and complex commercial lending. The MPA required knowledge of healthcare regulations and experience in navigating commercial lending on accounts receivable. Plaintiff characterizes this case as a straightforward debt collection action, but argues novel issues were raised such as the application of California substantive law regarding breach of contract and statutory violations to a dispute located in Texas, the imposition of a constructive trust over property located in Texas, and a party who has failed to respond. Neither law firm was precluded from other employment and the nature of the fee award was neither contingent nor fixed.

VII.    <u>The Court should award pre- and post-judgment interest.</u>

"When jurisdiction is founded on diversity, as is the case here, state law governs the award of prejudgment interest, while federal law determines post-judgment interest." *Washington Mut. Bank v. Crest Mortg. Co.*, 418 F. Supp. 2d 860, 862 (N.D. Tex. 2006).

The MPA contains a choice-of-law clause mandating the application of California law, so the undersigned applies California law regarding pre-judgment interest. Because the MPA does not stipulate a legal rate of interest, the interest rate is 10% per annum. *See* CAL. CIV. CODE § 3289(b) ("If a contract entered into after January 1, 1986 does not stipulate to a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after breach."). The interest is recoverable from the time of the breach where the amount of money due is liquidated, or from the time it becomes liquidated. *See Moreno v. Jessup Buena Vista Dairy*, 50 Cal. App. 3d 438, 448 (1976). Verde breached the MPA by failing to repay the full IPA, reduced by partial payments, after it became due on March 31, 2020. Thus, the full amount of actual damages became due and payable on March 31, 2020.

"The post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)," *Hall v. White, Getgey, Meyer Co., LPA*, 465 F.3d 587, 594 (5th Cir. 2006), and "[p]ostjudgment interest is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the

weekly average 1-year constant maturity Treasury yield,'" *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456–57 (5th Cir. 2013) (quoting 28 U.S.C. § 1961(a)).

IV.    Summary

Plaintiff sustained $107,559.69 in actual damages, exclusive of costs, reasonable attorneys' fees, and prejudgment interest.

The Court should award Plaintiff $322,679.07 in statutory damages, representing three times the actual damages of $107,559.69, for violation of California Penal Code § 496(c).

The Court should award Plaintiff $80,082.44 in reasonable attorneys' fees.

Even though it would be entitled to punitive damages and the recovery of its costs and expenses, Plaintiff does not request that relief.

The Court should award prejudgment interest and should impose a constructive trust for Plaintiff's benefit on funds wrongfully obtained by Verde and the proceeds of those funds. The Clerk should tax all costs against Verde. And the Court should award pre-judgment interest at the rate of 10% per annum.

## Recommendation

Plaintiff Pharma Funding, LLC's Motion for Entry of Default Judgment Against Defendant Verde Pharmacy & Medical Supply, LLC [Dkt. No. 58] should be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 18, 2022

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE